Thank you and good morning everyone. We'll call the first case. United States v. Begin. Thank you, your honor. Can I even pronounce the name? Begin. The accent is on the first syllable. Begin. Begin the beginning. Thank you for asking. May I please record? I am Karen Sirianni-Gurlock and I represent the appellate, Michael Begin. At this time I would ask the court's permission to reserve three minutes of rebuttal time. That's fine. Thank you, your honor. There are two questions which this court must answer in order to resolve this case. The first question is whether or not the district court ruled on Mr. Begin's motion for a downward variance. The second question is whether or not the district court should have ruled on Mr. Begin's motion for a downward variance. The answer to the first question is no. The answer to the second question is yes. And the end result is that this court has no choice but to vacate the sentence and remand for resentencing. So it's really a procedural argument in this case at that level? It's both, your honor, actually, because under the case laws I cited in my brief, substantive reasonableness encompasses a failure to give meaningful consideration to the 3553A factors or, as this court stated in Osborne, the failure to rule on a properly presented motion or, excuse me, 3553A motion. Isn't that procedurally unreasonable? I looked at the record. I couldn't see, as far as I can tell, this very experienced and talented trial judge talk about the variance at the beginning and then a whole lot of water flowed under the bridge and they never got back to it. Yes. So there's nothing really of substance. That's a procedural reasonableness requirement. Procedural error, the remedy is remand, and this court could dispose of the case without even getting to the question of substantive reasonableness. I think we won't know whether it's substantively reasonable unless and until he evaluates, for example, the question of whether it's acceptable to punish somebody for this federal crime. I mean, there's a federal crime in the books that would involve contact, and the remedy to a minimum is 15 years. Here, the sentence was 20 years. That is true, Your Honor, and I'm not trying to unnecessarily complicate things, and if you'll forgive me for saying so, I think that some of the court's case law on substantive reasonableness really blurs the line between substantive reasonableness and procedural error and that they take errors that could be simply dismissed as procedural error and blend them in with the substantive reasonableness inquiries by saying that it simply can never be substantively reasonable if a proper 3553A analysis has not occurred. You're referring to your disparity argument. Is that correct?  Were there really sufficient facts in the record to support your disparity argument? There were, Your Honor, because it was based on the penalties in both state and federal court for actually committing statutory rape and comparing them to the penalties to which Mr. Biegun was exposed and then actually sentenced for merely attempting to commit a statutory rape. Does 3553 point to disparities among federal defendants, or can you really compare federal defendants with state defendants? The statute simply says defendants and does not distinguish, but if this court doesn't want to look at state defendants, you don't have to because there's a sufficient record made and comparison made for the federal penalty for statutory rape occurring on federal lands, and even on a straight federal to federal comparison for the attempt versus the commission, this sentence was excessive because the statutory maximum for actually committing a statutory rape on federal land is 15 years. It's a maximum. It can't exceed that. Here, the guideline range, the top end of the range was 17 and a half years, and then through an upward departure, not a variance, but a departure, the sentence actually imposed was 20 years. It would seem to me that Congress has made a judgment that it's going to punish one form of conduct more severely than another. I understand your argument, and it is a good, compelling argument, but I wonder about congressional judgment, and it appears that Congress wanted to punish individuals who use electronic devices to lure children, perhaps across state lines, many distances, but that's a congressional judgment based on their findings. Can we say that Congress, you're wrong, you really shouldn't have penalized that conduct so much, and that this defendant is correct? It is not saying that Congress is wrong. Congress implemented these punishments and the ones that were applied here through the guideline regime, and the United States Supreme Court in Booker and all its progeny have said that the guidelines are not mandatory. All we asked was that the district court consider these discrepancies between commission versus attempt as a 3553A mitigating factor, and the district court failed. Commission is statutory rape is often consensual. It's simply the age. Exactly. Whereas here you had a guy with handcuffs, all sorts of, did he have a knife? He did. Yeah, you know, I mean, this didn't look like he was anticipating that, well, if this wasn't consensual, he was going to go forward with it anyway. We don't know, because it never got to the fact to the point where he ever committed. In considering the attempt, I think it is within the purview of the court to consider these things he brought with him. It is within the purview of the court to consider that, and the court did consider that when they imposed the upward departures, based on understatement of criminal history and the failure of, I think it was 4B, 1.5B1 to give an adequate upward enhancement. Those factors were considered, but the district court also had to consider the variance arguments. They're separate arguments. They're apples and oranges. Variances and upward departures are separate steps in the three-step sentencing process. They're governed by different standards for granting or denying, and they were requested on different bases. Your point is that luring a child for purposes of sex is being punished more severely than the act itself. Yes, and all the district court, all we ask is that they consider it. I don't think this court can even pass judgment on this sentence, because we, excuse me, you are court of review. That's what I was suggesting at the outset. It's a procedural issue. Judge Koval on remand might very well impose the same sentence, or he might not. He might, because there is nothing for this court to review on the variance argument. He needs to examine the PROTECT Act and ask why the PROTECT Act involves these draconian penalties, and then he needs to consider the federal land statutory rate argument that was fairly presented by Mr. Patton, and then make a decision. That's what you're asking for. An issue of law that we as a court can look at the statutes involved and say, well, this is the will of Congress, so be it. I wish I could say that you should just lower the sentence, but I think that would be extremely dishonest of me. Under the case law, Judge Koval did not make a ruling. You have nothing to review, and you may only set it back. But we can look at the language of the statutes. I don't even think we're there yet, Your Honor, because he did not rule. The only way that you could find that Judge Koval ruled on the variance argument is to assume that a ruling on the variance argument is subsumed within the ruling for the upward departure, and it's not. We know from the Empire Nation that that can't be true. You would have been satisfied with a ruling such as, I have considered your disparity argument, and find it without merit. Yes. But he didn't say anything. He didn't say anything. However, by implication, couldn't we say that he heard the argument and granted the government's upward departure, and in so doing, rejected your client's argument? No, and there are four reasons. That is the key to the case. And if I could ask the court's indulgence while I go through my little list of four. Number one, sentencing is a three-step process. Step number two is ruling on upward departures. Step number three is ruling on variances. The steps are not collapsed in the case law. It's a clearly delineated three-step procedure. Number two, variances and departures are governed by different standards. Departures are out of the heartland. Variances are mitigating factors. Number three, there were different bases for requesting the upward departure and the downward variance. Your point is whenever there's an application for a variance at step number three, the judge must reference that application and rule on it. The case law requires it. Osborne says they must rule on any properly presented, colorable claim. As I was saying, this is number three, there were different bases. The upward departure was requested on an under-representation of the criminal history grounds. The variance was requested on the grounds of the discrepancies between the penalties for actually committing versus attempting to commit. Fourth, and I think this is the most important, Judge Cohill said on the record, I'm going to rule on your upward departure, and then I will rule on your variance. That's it. Appendix pages 96, 151, and 153 through 54. But he never did. And he never did. So he said, I'm going to come back to it. He intended it to be a separate ruling, as it should be. And so I think there is no alternative but to remand for the failure to rule. But isn't it inherent in him granting the upward departure that he is ruling on the variance? No. And again, that's the list of four. Different steps in the procedure, different standards for granting are denied. They were asked for on different bases. So saying that his criminal history under-represented, his score under-represented the actual history, is not the same as saying you don't deserve a variance because of the discrepancy in the penalties for actually committing versus merely trying. And think about what he said, because you're separate, and I'm doing it separate. Excuse me, Your Honor. Yeah, back to Judge Roth's point. Why don't you look at the law and say he's not entitled to this? You can't fill in the gaps, with all due respect, for the district court. And the case law is very clear that when a district court doesn't rule on a variance request, and that's in the Osborne case again, this court, as an appellate court, does not go and fill in the gaps and look through the record and say, Your Honor, you would say that's true whether we think that the request is valid or not. Exactly. You still have to rule on it. It's procedural error, and procedural error is an automatic reversal. Thank you very much. We'll get you back on review. Thank you. Mr. Ivory. I was a district judge back before the guidelines. I'm sorry, was that a question to me? No, that was just a comment. I'm sorry, I missed what you said. I was a district judge back before the guidelines. Okay. May it please the court, my name is Mike Ivory. I'm an assistant U.S. attorney from Pittsburgh. Good morning, Your Honor. Good morning. I believe that when you look at the overall record, Judge Coyle did, in fact, rule on the variance. Now, he did not use magic. I read every word of it. I didn't see it. I think, Your Honor, first of all, the court summarized what the defendant's argument was. That's found on page 96 of the appendix. And in 96 he says he's going to get to a variance later.  He summarized what the defendant's position was, dealing with the disparity between the state and federal sentences. Then on page 152, this is after the government introduces the evidence pertaining to the statutory rape that occurred in Bradford while the defendant was soliciting what he believed was a 14-year-old girl. Page 152, Judge Coyle specifically stated, quote, I don't have the line, but... All right, just go ahead, Doug. We further believe the extensiveness of his overall criminal history, including the incidents presented in court today, overall underrepresent his criminal history when compared to similar defendants. That's a departure issue. I don't believe so because under 3553A6, it talks about similar defendants charged with similar crimes. All right, but their argument was... They made two arguments, and the first was unreasonable disparity that caused the state punishment, as I recall. The state max is 10 years? Maybe? It may be. A lot less than 20 years, let's agree. Well, if it was just statutory rape, aggravated sexual assault, that's what it is. If it was forced rape or a situation where there was an actual forced rape of the child, it's a felony in the first degree, so it would be a minimum sentence of 10 years up to life. Okay, all right. But their first argument was disparity between the state and the federal. That's correct. Our court has opined, I think at least twice, non-precedentially, that that is a non-culpable argument. Actually, on five separate occasions. Five occasions, okay. And there are seven public decisions. All right, so Ms. Gerlach might not find much help there. However, they also made the argument of federal-federal disparity. Right. Where in this transcript did Judge Cogill answer the question as to whether or not a downward variance was appropriate based upon the federal-federal variance? Well, we do... Disparity, excuse me. We do have the parts through the record, Your Honor, and there is not an explicit finding, but there does not have to be an explicit finding so long as the court gave meaningful consideration. She has to show that he ruled on the variance. I can't even find where they doubled back to talk about the variance. Where did he say, now that I've ruled on the... Gunter is well-known to all of us. Absolutely. And you spend your time ruling on departure motions, and then when you've finished your work there, you move to the 3553A factors to consider the variance. Where in this record can you cite that he did that? At page 162, the court acknowledged that it had consulted the sentencing guidelines and had considered the parties' arguments with respect to the 3553A factors. Just the blanket statement, though. Then, at page 166, the court indicated that the defendant was 34 years old, had a long criminal history involving a disturbing amount of sex crimes against minors. Can you tell whether, based on what you've just read, the judge made a ruling in your favor or in Mr. Began's favor? Well, the judge specifically granted the government's motion for an upward departure and upwardly adjusted the defendant's criminal history category. Supposing Began wanted to appeal the judge's decision, on what basis in the record could he appeal that decision? He could challenge it on the basis that the government did not... But there's no... I mean, my point is that there doesn't seem to be a ruling that he could say, I'm going to appeal that ruling. You mean the judge's granting of the upward departure? Yes. I believe the judge... The disparity issue. Apparently, he may have taken it into account. We don't know on the basis of this record. But I don't know if there's a specific ruling that he made that a defendant can then appeal to this court. I think that the record does show that the court did give meaningful consideration to the argument. I think you have to... Yeah, but we don't know what that meaningful consideration led to, whether the defendant's request was granted or not. Well, the defendant's request obviously was not granted because he was sentenced to 240 months. Is it that obvious? I believe so. I mean, Mr. Patton argued... Well, 240 is within the guidelines range once the upward departure was granted. That was the upward departure. So, isn't... You've spent even more time than I did in the trial courts, right? Wouldn't you expect to see here a record that says something like, Now, Mr. Patton, let me hear your arguments for a variance. Well, Your Honor, it doesn't make any sense to punish someone who's trying to do something worse than somebody who actually did something. And then you get up and you say, Well, Your Honor, in fact, there are very different considerations here. The PROTECT Act was targeted at computer crimes. It's a different kettle of fish. The National Park statutory rape, as Judge Roth alluded to, might have been written a long time ago and might deal with consensual sex in the parks. That's precisely the sort of debate that we require of trial judges so that we have a record to review. Is it not? Well, that's correct. However, at pages 154 through 156, and again, Mr. Biegun's argument kind of morphed as the sentencing hearing progressed. After the court granted the government's upward departure, Biegun changed his position. He went from arguing for a mandatory minimum of 120 months to a sentence of 180 months. And in so doing, he used, dovetailed the disparity argument that's found on 154 to 156 of the appendix. And he goes on at great lengths, arguing about the federal, alleged federal disparity involved here. And you have Judge Fildo a couple of pages later saying, I've considered your arguments. And in the court, the sentence of 240 months. You are familiar with U.S. v. Osborne. Yes, Your Honor. We vacated a district court sentence for procedural error when the court failed to consider or discuss the defendant's disparity argument on the 3553. That's correct. Why doesn't that case control this case? It doesn't control because, and I'd like to talk about the government's second position in this case, which was that the various arguments lack color. I thought that's where you were going to start. I thought that was your better way. But where's the case law? As I've suggested, you've got plenty of non-presidential authority on the state with federal disparity. But where's the case law? I don't think we could find any on the federal disparity. I think what you have to look at is what is a variance based upon disparity. Look at the cases that this court has decided dealing with variances. In each of the cases, and I'm referencing the Osborne decision, United States v. Charles, as well as United States v. Friedman, in each of those cases, the variance was based upon objective data that the defense presented to the district court saying, defendant Joe Smith was sentenced last week in this district. He was... For similar offenses? Similar offenses, similar background. We're comparing two defendants. The argument proffered is not compare me to some other defendant. It's compare me to myself. Had I been convicted of a crime that is worse than the crime of which I was actually convicted? Right. Is that a matter of law, that these are two statutes, and we, as a court of appeals, can look at the two statutes and determine whether it is appropriate in that instance to say that this is what federal disparity is focused on? There are two statutory rape statutes in the federal code. There is the one that... Well, my question is first, is this a matter of... Do we need the facts of this particular case to consider this issue, or as a matter of law, can we consider whether these two statutes present a disparity which should be noticed under 3553? Well, you do have to take into account, Your Honor, the facts of the offense as well as the history and characteristics of the offender. So you're saying I'm wrong and we ought to send you back? I would never presume to do that, Your Honor. Well, I mean, you know, I'm trying to throw you a softball. Right. I mean, to that point, it is a matter of question of law. However, you have to consider which statute would be appropriate for this particular factual situation. I think that your question of Ms. Gerlach or your observation of Mr. Biegan showed up with a knife and handcuffs when he was meeting what he thought was a 14-year-old girl. Wait a minute. Is that really relevant for purposes of the disparity? I think so because you have to take into account, Your Honor, that there are two statutory rape statutes. Mr. Biegan likened his... I'm trying to present the issue without looking at the facts of this case. When we talk about disparity between federal offenses, looking at the statutes themselves, can't a court of appeals without consideration of the facts of a specific case say that the issue of disparity does not apply between the penalties imposed by two different statutes? I think you're right because then the penalties... Obviously, it's up to Congress to determine how these harms should be addressed, and they do that by determining what the length of the penalties are. The problem is the judge in the first instance never addressed the issue. Again, I don't think that the judge really had to because it was not a colorable argument. How can you say it's not colorable? To me, the definition of not colorable is a substantial body of case law saying so, and that's why I suggested to both you and Ms. Kerlock that you're on solid footing on the federal-state disparity. Correct. But I don't see a white body of case law that tells Judge Koval of this court that it's a non-starter to argue the federal disparity. Well, it's a non-starter because you have to have objective data. You have to be able to point... Mr. Began, to make a proper or a colorable variance argument, would have to say, look, this guy was convicted. Defendant James Brown was convicted for having unforced sex with a minor in the Allegheny National Forest. He didn't do that. He filed a hypothetical, and the problem with that is the hypothetical paints him in the best possible sentence he might. So Judge Koval could agree and reject all those arguments for the reasons you articulate, but it's the trial judge's privilege and duty to do that in the first instance. This is the argument that was presented to Judge Koval. Mr. Began said, look, my crime is more akin to me having sex with a minor under Title 18 United States Code, Section 2243. The government argued that no. If you look at Mr. Began's history and characteristics, here's an individual who has always, when he's had sex with children, has used some element of force or some element of coercion, and when he shows up to meet the victim in this case, on the day in question, he has a knife and a set of handcuffs. But all of that were made to influence the judge's decision to grant the motion for operative departure, did it not? No, that was based upon the uncharged conduct as well as the facts pertaining to the juvenile rape that occurred with Mr. Began in 1993 when Mr. Began was 16. But the point I was trying to make, Your Honor, is that if you look upon this hypothetical and you spin it out and you take it to its logical conclusion, which is chances are pretty good Mr. Began would have had to use force if this girl had decided that she did not want to have sex with a 32-year-old man. Then we're looking at a statute, 2241C, which involves forced sex against a child, and then Mr. Began would have been looking at a mandatory minimum of 30 years. And where is that information played out in the transcript? Where is that information? In Mr. Trayvill's response to Mr. Patton's argument concerning the argument he made involving the federal disparity. Where? Pages 156 to 158, Your Honor. Can you go back to the Osborne case where we vacated a sentence because the court did not consider defense counsel's arguments? That's correct. In Osborne, the basis for the variance in that decision was that the district court had been specifically directed to a case. Osborne was, it was also a sex crimes case. It was, and it involved technology as well. That's right. That's correct. But in Osborne, the basis for the departure was defense counsel referenced, I believe, United States v. Kendrick, a case that, with similar facts, in arguing the disparity. Again, that was a proper disparity argument because you're pointing to a similarly charged, similarly situated defendant. But the point I'm making is that there was no consideration of the disparity argument by the court, so the appellate court had no idea what ruling the court made, and therefore the sentence had to be vacated. That's correct. And my question to you is why doesn't that case control this case? Because there's more on this record than there was in the Osborne decision. Okay. I got your, your time is up. We need to move forward. Let me get Ms. Gerlich back. Thank you, Your Honor. The federal-to-federal comparison was well preserved in the pleadings and at the sentencing hearing. It was not a last-minute argument that morphed in as the government characterized it, and all this court needs to do is look at the trial lawyer's position filed after the PSR and then the reply to the government's motion for upward departure, and you will see that it is well preserved, the federal-to-federal comparison. The only reason why a state-to-federal comparison ever really came in in this case was that the indictment cited to the Pennsylvania state statutory rape law, and I think that's a distinction, as I pointed out in my reply brief, to the body of law the government relies on saying you can't do a state-to-federal comparison. But doesn't the prosecution have a large amount of discretion in what offense he's charged? Yes. And if the prosecution chooses to charge Mr. Biggin under the electronic attempted rape, he did, rather than under the national park statutory rape, particularly since she wasn't in a national park, isn't that their choice? And can't we, as a matter of law, look at these two statutes and say this is not what is meant by disparity? There was no choice because, as your Honor pointed out, none of the facts are correct. So then why do you say there is a disparity? Because it's looking at just the actual commission of the crime. And I think part of the hang-up here might be that a lot of the argument has focused on A6, which is comparing similarly situated defendants. But if this court has discomfort with that 3553A factor, you need only look to the factor in A1, which is the nature and circumstances of the offense, and I think it's completely fair, in considering the nature and circumstances of the offense, to say this was an attempt. Can't we, as a court of appeals on a legal issue, look at those two statutes and make that determination rather than sending you back? Not until the district court does it first. Why? Because it's a matter of law. And there's nothing to review. The district court needs to review the two statutes. You have to review rulings. People can review our ruling in the future. Someone's got to make the first ruling in the first place, right? The district court. No. In a matter of law, we can make them. Because it's not an issue of fact. It's an issue of, are these two disparate statutes what is meant by the concept of disparity in federal sentencing? But that's not what happened in Osborne. I know, it's different. To say we're not filling in the gaps, we're sending it back for a ruling that we can review. As an appellate court, we don't make it up in the first instance. But as an appellate court, we can review statutes. You can affirm on any basis, certainly. But I would submit with all due respect, your Honor, I think that's true. There's no factual determination needed when we're reviewing statutes, right? That is true. Yeah. Mr. Ivory. Just one last question. Mr. Ivory cites 154 and 156. In reviewing that section again, it's clear that the judge moved into Stage 3 of Gunter and asked for consideration of the 553A factors. You see that there? I'm sorry, what are you reading, 154? It looks like it starts at 154. I'm sorry. I just had it. Okay, now at the bottom of 153, after he establishes a range of 188 to 240, now he proceeds to consider 553A. You see that? Then the defender, Mr. Patton, argues that there's an unfair disparity between the federal crime charged and the actual federal statutory rape crime. I see. And within that, he does ask for the 15-year sentence. Correct. And then the prosecutor argues against that. Yes. Citing the facts of the case that Judge Roth had alluded to about the knife and the handcuffs. And later, after the mother was heard from, the mother of the victim, the judge rules saying, well, consider all the arguments. Why is Mr. Ivory wrong that we can glean from that transcript that the trial judge heard and considered the federal disparity argument? Two reasons. Number one, it's a rote recitation. It's what this court has condemned. It's merely parroting the 3553A factors. Second of all, there's no actual application of the factors to the argument. In other words, Judge Cogill never said why Mr. Patton's argument on Mr. Beatty's behalf should not have prevailed. And he never says why the commission of the offense warrants a lesser sentence than the attempted commission. There's no application of the factors of 3553A to the argument for variance presented. Okay. You both make very good points, Ms. Garlick. Thank you very much. Thank you. Mr. Ivory, thank you as well. Thank you, Your Honor. Well-presented arguments. We'll take the case in the advisement and call the next case.